The opinion of the court was delivered by
Manning, C. J.
Michel Elorane died in August 1870, leaving a will, a widow, and nine chidren, six of whom were minors. Ail the property was community. The testator devised to l.is widow the usufruct of his property, and appointed her executrix. She qualified, and was also confirmed natural tutrix to the minors.
In December 1871, the widow, as executrix and tutrix, petitioned the court for a sale'of the property, or of so much thereof as is necessary to pay over four thousand dollars of debts, and the costs and charges, and prayed a convocation of a family meeting to advised,ouehing the sale of the minors’ interests, and prescribe the terms of sale. The meeting was held, the terms of sale prescribed, the sale ordered, and fifty-six it ts of ground in New Orleans were sold in February 1872, and realized six thousand seven hundred and fifty dollars. The terms *494 of sale were one third cash, and the residue on one and two years’ credit.
Ou February 15,1873, just as the first note had matured, B. & A. Soulié, alleging that they were creditors of the succession for $525 principal, prayed that the executrix be ordered to give security, and the order was granted. They also alleged that more than a year had elapsed since her qualification, and- that no account had been rendered by her, and prayed that she be ordered to file an account in ten days, and that order was made. We hear no more of these creditors, or of .their claim, nor was any account filed. But a few days afterwards, on February 26th., Mrs. Florane borrowed of John Shrepfer five hundred .and sixty dollars, and mortgaged to him an undivided half of a piece of ground, and on the 24th. of August 1875, she executed to Cestac, the plaintiff, her m te for one thousand dollars, and a mortgage on an undivided half of six half-squares of ground in this city, which belonged to her, the Act recites, “as having been common in goods with her late husband.”
In 1878 this note had been reduced to $910, and Cestac then sued out executory process for the foreclosure of his mortgage, when his proceedings were arrested by an injunction of Mrs. Florane, in her capacities of executrix of her husband and tutrix of her minor children, and by all the major heirs of the husband. They allege that the succession of Michel Florane is the owner of these six half squares, and that Cestac is about to have an undivided half of them sold under his mortgage— that, they are still under administration in the Second Court of Orleans —that there has never been a partition of the succession, or any part thereof, between the widow in community and the heirs, and the executrix has not made any settlement of her administration, and therefore the seizure is iliegal.
The defendant in injunction excepted that no cause of action was shewn, and no interest in the subject matter of the suit, and reserving the exception, answered by a general denial, and a special averment that the undivided half of the seized property was not under administration.
There has never been any account filed, and consequently the record does not shew what the executrix has done with the proceeds of sale of the fil'ty-six lots. Neither does it shew any action of the succession creditors, except that we have noticed. The whole inventory is only $5,102 50. The last paper filed by the executrix in the succession was on May 3,1876, She had executed the mortgage to Cestac fourteen months before.
The heirs of the succession raise the questions, whether the executrix, who is also widow in community, can validly mortgage an undivided half of any specific property of the succession, and whether the *495 mortgage creditor can foreclose his mortgage, while the administration is pending, and sell absolutely an undivided half of the property without regard to the ultimate rights of the heirs.
Upon the dissolution of the'community by the death of one of the spouses, the survivor becomes owner of half of the community property, subject to acceptance or renunciation, which may be express or implied. Unquestionably, the widow Elorane accepted the community by mortgaging an immovable, this being one of the instances of implied acceptance given by writers as illustrative of the manner in which an acceptance is implied or tacit. Si elle liypothéquait un immeuble, ou constituait une servitude sur un bien dependant de la communauté. 2 Bellof, 206.
But while a succession is under administration, the widow in community and the heirs have no right to interfere with it, and have nothing to claim until the debts are paid, and the administration has legally terminated. Sue. Ogden, 10 Bob. 457. And there must be an administration when there are debts of the deceased to be paid, and a part of the lieirs are minors, who could only accept with benefit of Inventory. Civil Code, art. 1034 new no. 1041. It is true, even after administration is granted, beneficiary lieirs, if not opposed by creditors, may take charge of and administer the property before the administration is entirely completed, if put in possession thereof legally, and these beneficiary heirs may be sued by a creditor of the succession. Soye v. Price, 30 Annual, 93. But the succession, so long as it exists, is an entirety. As an ideal being, it takes the place as it were of the deceased, and so far as proprietary right is concerned, it is a prolongation of that of the deceased owner.
The proprietary interest of a widow in community is necessarily contingent. She owns one half of the residuum after the debts are paid. Until the debts are paid, it cannot be certainly known whether ■there will be any residuum, or if any, what portions of the property will remain to constitute that residuum. How then can she pick out a particular piece of property, or several pieces, and assuming that the sale of it or them will not be necessary to pay the debts, appropriate an undivided half to herself, and mortgage it as her own absolutely ?
The plaintiff argues that since the widow becomes responsible for ■half of the debts by accepting the community, she is also absolute owner of one half of the property. This is a non seqnitur. Her acceptance gives to the creditors two securities — that of the succession property, and that of her own. Because she becomes liable by acceptance to pay one half of the debts, it does not follow that the creditor loses his primary right against the succession property.
Nor can the law intend that where a person holds property in sev *496 eral capacities — for instance as widow in community, as executrix, and as tutrix — she can alienate it in one capacity to the detriment of the-others. It is no answer to say that she alienates as executrix when she-sells for the payment of debts. That is not her voluntary alienation, but an alienation in whieh she is but an instrument of the law. The-creditor is not hurt by such alienation, for it is made to pay him. The-heir is not hurt, for like the widow in community, he is entitled only to what is left after the debts are paid.
This case is almost identical with Hickman v. Thompson, 24 Annual, 264 and 26 Annual, 260. There as here, the widow had apparently used succession funds and had not accounted for them, and had mortgaged-an undivided half of property belonging to an unsettled community for her individual debt, and it was held that as creditors had not complained, the heir could not. This is placing minor heirs at the mercy of an-improvident executrix, or widow in community. In our opinion, so far from the heir being compelled to stand by and witness the spoliation of his heritage, it is the manifest and imperative duty of those who represent minor heirs to arrest a sale of the property of an unsettled succession, about to be made to pay the individual debt of an executrix or widow in community, and to delay it until the administration is forced to its end, and the rights both of the widow in community and the heirs-are definitely ascertained. The major heirs may interfere or not as suits-their pleasure, but they who have minor’s interests in charge cannot use-their own option. And to inflict damages upon the minors, through their representative, for the attempt to protect their rights, as was done-in this case and in that cited, is to add to the injury inflicted by an improvident executrix or widow in community, another injury inflicted through the medium of a court.
Mrs. Elorane could not mortgage a particular immovable of the succession for her own debt. She cannot select any specific piece of property, and by her own volition make an undivided half of it her own, and thus convert her previous ownership into an absolute and indefeasible title. The heir, as well as the creditor, is entitled to have the administration of the succession, as an entirety, completed. ‘Non con-stat but that the widow has airea ly received her full half of the entire succession, and if a mortgage given by her upon parts of its remaining property were held good, and the property alienated by its foreclosure, the heir would be denuded of his inheritance. Therefore
It is ordered, a lju iged, ami decreed that the judgment of the lower ourt is avoided aal reversed, and it is now decreed that the injunction of the heirs, both major and minor, is maintained and perpetuated, and they have judgment against the plaintiff for their costs in the lower court, and for those of the appeal.